UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SANTIAGO ROGERIO RAMOS, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 26-11388-LTS |
| ANTONE MONIZ et al., | ) ) ) | |
| Respondents. | ) ) | |

ORDER ON MOTION TO ENFORCE JUDGMENT (DOC. NO. 12)

April 27, 2026

SOROKIN, J.

Before the Court is a motion by the petitioner in this immigration habeas case seeking to enforce the Court's previous Order allowing the petition. Doc. No. 12. The petitioner argues that his ongoing detention is a result of a bond hearing that did not comport with the Court's Order. The respondents have opposed the motion. Doc. No. 16. Upon review, the motion to enforce is ALLOWED for the reasons and to the extent described herein.

Santiago Rogerio Ramos, a native of Brazil who has lived in the United States for several years, filed a habeas petition after he was arrested and detained by immigration authorities last month. Doc. No. 1. The petition elicited an abbreviated response by the government that acknowledged this Court's rulings in prior similar cases, conceded that the same result would apply here, and suggested no further briefing or argument was necessary. Doc. No. 7. Based on those representations, the Court promptly allowed the petition. Doc. No. 8. As relief, the Court required the respondents to release Rogerio Ramos unless he was given a bond hearing by April 2, 2026. Id. The Court further directed that such a hearing be conducted pursuant to 8 U.S.C.

§ 1226(a), subject to the burdens of proof the First Circuit has found are required by the Constitution's guarantee of due process.  Id. (citing Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021)).

On April 3, the respondents reported that a bond hearing had occurred, at which an immigration judge ("IJ") had denied bond.  Doc. No. 10.  The respondents attached a check-the-box form order memorializing the IJ's finding that Rogerio Ramos "is a danger to the community by clear and convincing evidence."  Doc. No. 10-1.  The order provides no reasoning, cites no evidence, and does not in any way reflect whether the IJ considered any alternatives to detention other than (or in addition to) cash bond.  Id.

On April 8, Rogerio Ramos filed the motion now pending.  Doc. No. 12.  He contends that the respondents did not provide the relief ordered by this Court because the IJ failed to afford Rogerio Ramos the due process guaranteed by the Constitution and the First Circuit's precedent governing bond hearings.  The motion was accompanied by exhibits including the evidence the government had placed before the IJ in support of its request for detention without bond, Doc. No. 12-2, and the evidence Rogerio Ramos had submitted to the IJ in support of his request to be released, Doc. No. 12-3.  The respondents have neither contested nor supplemented these exhibits, except by filing a copy of the transcript of the bond hearing after the Court directed them to do.  Doc. Nos. 16, 18, 18-1.

The record before the Court reveals the following.  The government submitted to the IJ only two pieces of evidence: 1) a DHS form memorializing the recent arrest by ICE, which the report described as having followed Rogerio Ramos's "arrest by the Everett Police Department for assault and battery" on March 22, 2026, Doc. No. 12-2 at 5–8, and 2) an arrest report describing domestic-assault-and-battery allegations against Rogerio Ramos by his partner a year

2

earlier, on March 12, 2025, id. at 9–11.  Apparently blurring the 2025 and 2026 encounters, the government urged the IJ to find Rogerio Ramos poses a danger to the community warranting detention without bond, tersely arguing: "The respondent has had an arrest for assault and battery.  These charges are currently pending.  It – the respondent then punched and scratched a victim."  Doc. No. 18-1 at 5.

Rogerio Ramos, for his part, submitted a legal memorandum in support of his bond request, see id. at 3, accompanied by seven supporting letters from people who know him and documentation from his U.S. citizen sponsor, who is also his employer and was willing to provide him a place to live, Doc. No. 12-3.  Besides the documentary evidence, Rogerio Ramos's counsel informed the IJ that he was prepared to provide testimony from the following individuals who were present at the bond hearing: Rogerio Ramos, appearing via video from detention and able to testify about the circumstances surrounding his March 2026 encounter with Everett police; his girlfriend, who is the mother of his child and the alleged victim in the 2025 domestic assault matter, willing to testify about that event and her lack of fear of Rogerio Ramos; and his employer-sponsor, offering support in the form of a place to live that would be closer to work while providing some distance from the home in which his only police encounters originated.  Doc. No. 18-1 at 6, 8.  Rogerio Ramos's lawyer also represented, as an officer of the court, that his review of Massachusetts court dockets had confirmed that the 2025 charges were dismissed (a fact also described in the DHS form submitted by the government, Doc. No. 12-2 at 7), and no charges were filed after the 2026 encounter preceding his immigration detention.  Doc. No. 18-1 at 7–8.  Rogerio Ramos asked the IJ for release on bond, provided he reside at the home offered by his employer-sponsor.  Id. at 6–9.  He also pointed the IJ to First Circuit caselaw limiting the

extent to which a police report, standing alone, can provide a basis for finding that the government has met its burden of proof in immigration proceedings. Id. at 7.

On this record, the IJ denied bond, providing the following explanation, which the Court reproduces from the transcript verbatim:

> The court is going to find that the respondent is a danger to the community by clear and convincing evidence, and the Department has met its burden. Based on the police report – I understand that counsel argues that he wasn't arrested, he wasn't booked, but he was there as, like, for protective order. The report does state the charge is – his domestic assault and battery, and so, I am going to find the police report reliable. It notes that the victim had continued – she stated that he had a – physically abused her in the past. He had punched her on the – her right arm, scratched her in the process of grabbing a phone from her. She had marks from the punch and scratches on her arms. There were photographs and documented – and additionally, the respondent admitted that he did punch and scratched her this – like, this morning. That's exactly what's – it said. So, the victim – so, while I understand that it may have to – have been dismissed, his own admission – I'm not sure why they were dismissed, his own admission – but the circumstances of and the nature of the arrest, because he was booked – the court will find that the respondent is a danger to the community by clear and convincing evidence.

Id. at 9. Nowhere did the IJ mention having read or evaluated Rogerio Ramos's exhibits. She did not engage with Rogerio Ramos's proposal that living in a different location would avoid the potential of further domestic conflict—the sole source, on this record, of his contacts with police and the government's argument concerning dangerousness. Nor did she address any other alternatives to detention.[1]

Careful consideration of the foregoing leads the Court to conclude that the bond hearing held in this case was deficient, and thus did not comport with this Court's Order, in at least two respects. First, the IJ failed to consider whether any alternatives to detention existed that would ensure the safety of the community notwithstanding the context-specific evidence of danger

---

[1] This is the second case in recent days in which the same IJ denied a person bond after a proceeding that was patently constitutionally deficient, and for similar reasons. See Order, Mijango Velasco v. Wesling, No. 26-cv-11355-LTS (D. Mass. Apr. 24, 2026), ECF No. 19.

advanced by the government.  See Costa v. McDonald, No. 25-cv-13469-AK, 2026 WL 371198, at *2–3 (D. Mass. Feb. 10, 2026) (holding that, by failing to consider alternatives, "the Government failed to provide Petitioner with constitutionally sufficient procedure" and discussing supporting caselaw).  This failure is especially concerning where Rogerio Ramos proposed a specific alternative or condition that would directly mitigate such danger: living apart from his child's mother and her family and, thus, separating himself from the environment in which his police contacts (none of which yielded criminal convictions) had arisen.  The government did not acknowledge Rogerio Ramos's proposal or any other alternatives, let alone advance a cogent argument as to why the danger it believed was shown by its reports could not be mitigated with measures short of detention.  In these circumstances, the IJ's silence as to alternatives rendered the bond hearing constitutionally deficient.

Second, as described above, Rogerio Ramos made a substantial evidentiary presentation to the IJ.  He also came to the hearing armed with family members and witnesses willing to testify on his behalf.  The proffered testimony concerned fact issues as to which the IJ expressed uncertainty (e.g., the reason the domestic assault charges had been dismissed, and the nature of his recent encounter with police), and yet the IJ proceeded without hearing from the willing and available witnesses.  Adjudicating whether to detain or release another person—a quintessential liberty decision—is one of the more serious matters resolved by judges.  It requires review and consideration of all the relevant evidence submitted.  Here, the IJ relied on uncorroborated police reports—and even deemed a report reliable simply because of "the nature of the arrest" despite the presence of the alleged victim of that offense.  Doing so in the face of Rogerio Ramos's presentation, without so much as mentioning his evidence, falls well short of what due process requires.

In sum, the Court ordered the respondents to provide Rogerio Ramos a hearing pursuant to § 1226(a) at which the question of detention was meaningfully evaluated pursuant to the statutory and constitutional law governing such hearings.  The respondents failed to provide such a hearing.  Rogerio Ramos's continued detention in these circumstances violates the Court's Order allowing the petition and granting relief in this case.[2]  Accordingly, the motion to enforce (Doc. No. 12) is ALLOWED.  **The respondents shall RELEASE Rogerio Ramos immediately, no later than 6 PM today, April 27, 2026.**  This order is without prejudice to the respondents requiring Rogerio Ramos to comply with reasonable conditions of supervision upon his release, provided such conditions are identified and imposed within seven days of this Order. The respondents shall, by May 5, 2026, file a status report confirming their compliance with this Order.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

---

[2] The Court notes and rejects the respondents' exhaustion argument.  Doc. No. 16 at 1–2.  This Court does not view the motion to enforce, or this action generally, as a vehicle for ordinary appellate review of an IJ's bond determination.  The Court has not determined in this Order that this IJ simply made the wrong decision in this case.  Rather, the record before the Court shows that the respondents failed to comply with its prior Order because they provided a bond proceeding that was obviously constitutionally deficient in the ways described above.